AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

District of Oregon

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No. **3:21-mc-01104** |
| The premises located at 6104 NE 14th Avenue, Portland, Oregon, and the person of Shane Travis, more fully described in Attachment A | ) ) ) | |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

The premises located at 6104 NE 14th Avenue, Portland, Oregon, and the person of Shane Travis, more fully described in Attachment A hereto,

located in the _____ District of _____ Oregon _____ , there is now concealed *(identify the person or describe the property to be seized)*:

The information and items set forth in Attachment B hereto.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18 USC Section 2252A | Transportation, Distribution, Receipt, and Possession of Child Pornography |

The application is based on these facts:

See the attached affidavit of FBI Special Agent Rebecka E. Brown.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Rebecka E. Brown, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ *(specify reliable electronic means).*
Telephone at 2:48 pm

Date:   10/13/2021

*Youlee Yim You*
*Judge's signature*

City and state:   Portland, Oregon

Honorable Youlee Yim You, U.S. Magistrate Judge
*Printed name and title*

STATE OF OREGON     )
                           )   ss:               AFFIDAVIT OF REBECKA E. BROWN
County of Multnomah   )

### Affidavit in Support of an Application for a Search Warrant

I, Rebecka E. Brown, being duly sworn, do hereby depose and state as follows:

### Introduction and Agent Background

1.     I am a Special Agent (SA) of the Federal Bureau of Investigation (FBI) and have been so employed for approximately thirteen years.   I am currently assigned to the FBI's Portland Field Office.   As a federal law enforcement officer, I am authorized to investigate and make arrests for violations of federal law, and to apply for federal search warrants.   I graduated from the FBI Academy at Quantico, Virginia, after completing a 19-week course of instruction. I have acquired knowledge and information about criminal conduct and investigation from many sources, including formal and informal training, other law enforcement officers, investigators, informants, persons who I have interviewed, and my participation in numerous investigations.   I received specialized training in investigating a range of offenses from violent crime to financial crime.   I have investigated matters involving the sexual exploitation of children, including the online sexual exploitation of children, particularly as it relates to violations of Title 18, United States Code, Sections 2252A and 2422.   I am part of the Portland Child Exploitation Task Force (CETF), which includes FBI Special Agents and Task Force Officers from Portland and Hillsboro, Oregon.   The CETF is an intelligence-driven, proactive, multi-agency investigative initiative to combat the proliferation of child pornography/child sexual exploitation facilitated by an online computer. As part of my duties as a federal agent, I work with local, state, and other federal agencies on joint investigations of federal offenses, to include financial crimes.

2.      I submit this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the premises located at **6104 NE 14th Avenue, Portland, Oregon**, and in particular, the common areas of those premises and any room rented, controlled or used by Shane Travis (hereinafter "Premises"), and the person of **Shane Travis** (DOB: XX/XX/1978), as further described in Attachment A, for contraband and evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Sections 2252A(a)(1), (a)(2), and (a)(5)(B), which prohibit transporting, distributing, receiving, and possessing child pornography.   As set forth below, I have probable cause to believe that such items, further described in Attachment B, are currently located at the Premises and/or on the person of Shane Travis.

3.      This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.   The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, interviews of witnesses, a review of records related to this investigation, communications with others who have knowledge of the events and circumstances described herein, and information gained through my training and experience.

## Applicable Law

4.      Title 18, United States Code, Section 2252A(a)(1) makes it a crime to knowingly transport child pornography using any means or facility of interstate or foreign commerce, or in or affecting interstate or foreign commerce by any means, including by computer.   Section 2252A(a)(2) makes it a crime to knowingly receive or distribute any child pornography that has

**Page  2  – Affidavit of Rebecka E. Brown**

been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer.   Section 2252A(a)(5)(B) makes it a crime to knowingly possess or access with intent to view child pornography that has been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or that was produced using materials that were mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer.

5.      "Child pornography" is defined in 18 U.S.C. § 2256(8), and includes any visual depiction of a child under the age of 18 years engaged in sexually explicit conduct.   "Sexually explicit conduct" is defined under 18 U.S.C. § 2256(2) and includes sexual intercourse, whether genital-genital, oral-genital, anal-genital, or oral-anal; bestiality; masturbation; sadistic or masochistic abuse; and the lascivious exhibition of the genitals or pubic area of any person.

## Background on Computers, Digital Devices, and Child Pornography

6.      Based on my knowledge, training, and experience in child exploitation and child pornography investigations, and the experience and training of other law enforcement officers with whom I have had discussions, computers, computer technology, and the Internet have drastically changed the manner in which child pornography is produced and distributed.

7.      Computers serve four basic functions in connection with child pornography: production, communication, distribution, and storage.

8.      Child pornographers can upload images or video clips directly from a digital camera to a computer.   Once uploaded, they can easily be edited, manipulated, copied, and distributed.   Paper photographs can be transferred to a computer-readable format and uploaded to a computer through the use of a scanner.   Once uploaded, they too can easily be edited,

**Page  3  – Affidavit of Rebecka E. Brown**

manipulated, copied, and distributed.   A modem allows any computer to connect to another

computer through the use of a telephone, cable, or wireless connection.   Through the Internet,

electronic contact can be made to literally millions of computers around the world.

9.     The computer's ability to store images in digital form makes it an ideal repository

for child pornography.   The size of the electronic storage media (commonly referred to as the

hard drive) used in home computers has grown tremendously within the last several years.

These drives can store thousands of images at very high resolution.   Images and videos of child

pornography can also be stored on removable data storage media, such as external hard drives,

thumb drives, media cards, and the like, many of which are small and highly portable and easily

concealed, including on one's person.

10.     The Internet affords collectors of child pornography several different venues for

obtaining, viewing, and trading child pornography in a relatively secure and anonymous fashion,

including Internet Relay Chat, instant messaging programs, bulletin board services, e-mail, and

"peer-to-peer" (P2P) file sharing programs and networks such as Gnutella and BitTorrent, among

others.   Collectors and distributors of child pornography also use online resources such as

"cloud" storage services to store and retrieve child pornography.   Such online services allow a

user to set up an account with a remote computing service that provides e-mail services as well

as electronic storage of computer files in any variety of formats.   A user can set up an online

storage account from any computer with access to the Internet.   Evidence of such online storage

of child pornography is often found on the user's computer.

11.     As with most digital technology, communications made from a computer are

often saved or stored on that computer.   Storing this information can be intentional, for example,

**Page  4  – Affidavit of Rebecka E. Brown**

by saving an e-mail as a file on the computer or saving the location of one's favorite websites in "bookmarked" files.   Digital information can also be retained unintentionally.   Traces of the path of an electronic communication may be automatically stored in many places, such as temporary files or client software, among others.   In addition to electronic communications, a computer user's Internet activities generally leave traces in the computer's web cache and Internet history files.   A forensic examiner often can recover evidence that shows whether a computer contains P2P software, when the computer was sharing files, and some of the files that were uploaded or downloaded.   Such information is often maintained indefinitely until overwritten by other data.

12.     Transfers of files or data between computers is assisted by reference to an Internet Protocol (IP) address. The IP address is assigned by a user's Internet Service Provider and functions much like a telephone number, making it possible for data to be transferred between computers. An IP address can be statically assigned, meaning it is permanently assigned to a particular device or user and does not change from one Internet session to another. An IP address may also be dynamically assigned, meaning that a different number may be assigned to a particular user or device during each Internet session. Internet Service Providers typically log the subscriber to whom a particular IP address is assigned at any given time.

13.     "Cloud" storage is a model of online networked storage where data is stored in virtualized pools of storage which are generally hosted by third parties. Hosting companies operate large data centers. Users who wish to store data online buy or lease storage capacity from the hosting company. Once a cloud storage account is established, a user can securely store files or data objects online in the account.

**Page  5  – Affidavit of Rebecka E. Brown**

14.     I know based on my training and experience, and based on conversations I have had with others who investigate child exploitation offenses, that people who have a sexual interest in children, including persons who collect and trade in child pornography, often receive sexual gratification from images and video clips depicting the sexual exploitation of children. They may also use such images and videos to lower the inhibitions of children who they wish to sexually abuse.   Such persons maintain their collections of child pornography in safe, secure, and private locations, such as their residence, and on computers and digital storage media under their direct control.   Such persons often maintain their collections, which are considered prized possessions, for long periods of time, and prefer not to be without their collections for any prolonged period of time.   In some recent cases, however, some persons with a sexual interest in children have been found to download and delete child pornography on a cyclical and repetitive basis, rather than storing a collection of child pornography indefinitely.

15.     Importantly, evidence of such activity, including deleted child pornography, often can be located on these individuals' computers and digital devices through the use of forensic tools.   Indeed, the very nature of the electronic storage means that evidence of the crime is often still discoverable for extended periods of time even after the individual "deleted" it.

### Statement of Probable Cause

16.     On February 22, 2021, adult witness (AW-1) from California telephoned the FBI National Threat Operations Center (NTOC) to report Possession of Child Pornography by Oregon resident, Shane TRAVIS.   AW-1 stated that TRAVIS sent her a video that depicted TRAVIS masturbating while watching child pornography.   AW-1 described the children as

**Page  6  – Affidavit of Rebecka E. Brown**

"nude" and "engaged in sexual acts."    AW-1 saved the text message but was concerned about having the child pornography on her phone.

17.    FBI Portland contacted AW-1 to obtain consent to search AW-1's cellular phone for evidence specifically related to distribution of child pornography by TRAVIS.    AW-1 added that TRAVIS sent approximately seven (7) videos via iMessage and then apologized for doing so after AW-1 confronted him.    AW-1 agreed to allow law enforcement to collect her cell phone and download the contents.    AW-1 provided TRAVIS's cellular number and confirmed that he used an Apple account.

18.    On March 15, 2021, FBI Portland contacted the Santa Cruz County Sheriff's Office (SCCSO) and arranged for deputies to collect a forensic image of AW-1's cellular telephone.    The same day, SCCSO deputies went to AW-1's home and performed an on-site review of several videos.    One video depicted a prepubescent boy under the age of ten performing oral sex on an adult male.    A second video depicted a prepubescent girl being digitally penetrated by an adult female.    After confirming that the videos depicted the sexual exploitation of children, deputies collected AW-1's phone for further analysis.

19.    On April 5, 2021, FBI Portland received a copy of SCCSO's official report.    A SCCSO deputy reviewed the text messages Travis had sent to AW-1 and described three of the videos attached to the text messages as follows:

> a. Video recording showed a white male adult with an erect penis while pleasuring himself with a tan object known as a fifi.    The video recording also showed a large projector screen in the background playing a video recording.

**Page  7  – Affidavit of Rebecka E. Brown**

The video recording on the projector screen showed a nude white male juvenile who was clearly under the age of 10 in a bathtub.   It also showed the erect penis of a white male adult.   The child then grabs hold of the male's erect penis with his hand and proceeds to masturbate the adult.

b. Video recording showed a white male adult with an erect penis.   The video recording also showed a large projector screen in the background playing a video recording.   The video recording on the projector screen showed a nude white female juvenile who was clearly under the age of 10.   The juvenile's genitalia (vagina) are exposed, and an adult placed their hand and fingers on the juvenile's vagina.   The adult's fingers then penetrate the juvenile's vagina.

c. Video recording showed a white male adult with an erect penis.   The video recording also showed a large projector screen in the background playing a video recording.   The video recording on the projector screen showed a nude white female juvenile who was clearly under the age of 10.   The juvenile's genitalia (vagina) are exposed, and a female adult orally copulates the juvenile's vagina.

20.    On April 20, 2021, FBI Portland received a USB drive containing the full cell phone extraction of AW-1's phone.   I reviewed the contents of the extraction and found that on February 14, 2021, TRAVIS sent twenty-two (22) videos to AW-1 that depicted the sexual exploitation of children.   In these videos, TRAVIS was masturbating and commenting on his

**Page  8  – Affidavit of Rebecka E. Brown**

degree of arousal while watching the children being sexually abused.   Preceding the first video, at 7:34 P.M., AW-1 sent TRAVIS a text asking, "*Whatcha doing*" to which TRAVIS replied "*Watching porn. Jerkin off.*"   Approximately one minute later, TRAVIS sent AW-1 a video of him watching child pornography.   The device TRAVIS used to record the video was taken from his perspective as he was facing a video of a child being sexually abused.   The video was being projected against a white wall in a dimly lit room.   There was a cluttered table between TRAVIS and the projected video.   The video is described as follows:

> **2/14/2021 7:36:45 PM**
> **Shane Travis (+15037561451)**
> **Description:**   24 second video of TRAVIS watching a video depicting a nude prepubescent girl, under the age of ten, lying on a bed with her legs spread apart, exposing her vaginal area.   An adult is inserting a long purple object with nodules on it into her vagina.   TRAVIS can be heard in the background saying, *"Tiny little girl's getting her little pussy fucked...with big toys."   "Happy Valentine's Day."*

21.    TRAVIS sent twenty-two (22) videos to AW-1 that depicted TRAVIS watching various videos of children being sexually abused.   The following represents descriptions of two videos:

> **Shane Travis (+15037561451)**
> **2/14/2021 7:44:17 PM**
> **Description:** An eight (8) second video of TRAVIS masturbating while he watches a video of a nude prepubescent girl, under the age of ten, licking the vaginal area of an adult woman who has an object inserted into her vagina. TRAVIS can be heard groaning, *"Oh god, I'm gonna cum so much."*

**Page  9  – Affidavit of Rebecka E. Brown**

**Shane Travis (+15037561451)**

**2/14/2021 7:48:33 PM**

**Description:**   TRAVIS can be heard saying, *"Oh god I wanna cum to this so much,"* as he continues to masturbate to a video of a fully nude prepubescent girl, under the age of ten, being sexually abused by an adult female.   The adult female directs the girl to perform oral sex on her while the adult female inserts an object into the girl's vagina as she periodically licks the child's genitals.

22.    On February 21, 2021, a series of text messages were exchanged between TRAVIS and AW-1, in which AW-1 confronts TRAVIS about sending the videos.   An excerpt of one exchange is below:

2/21/2021 9:22:32 AM

**AW-1:**   When you were drunk the other night you sent me videos of you getting off to videos of mommy and daughter play, there was videos of young girls being eaten out and penetration.

2/21/2021 9:22:55 AM

**TRAVIS:**   Ugh. I'm so sorry I did that.

2/21/2021 9:23:22 AM

**AW-1:**   On your projector.

2/21/2021 9:24:16 AM

**AW-1:**   Fucking the prosthetic pussy

2/21/2021 9:24:30 AM

**TRAVIS:**   That's not ok. I'm so sorry.

23.     Further text message exchanges between AW-1 and TRAVIS occurred on March 15, 2021.   One of the exchanges is summarized below:

3/15/2021 9:52:22 AM

**AW-1:**   You realize you are harming children watching the shit you watch ?

3/15/2021 9:53:12 AM

**TRAVIS:**   I would never harm a child and I never have. Ever.

3/15/2021 9:53:33 AM

**AW-1:**   Supporting it by watching it is harming children.

3/15/2021 9:54:02 AM

**AW-1:**   You sought it out on a dark web of some sort no?

3/15/2021 9:54:13 AM

**AW-1:**   It is harming children watching it.

3/15/2021 9:54:17 AM

**TRAVIS:**   Someone sent it to me.

3/15/2021 9:54:28 AM

**AW-1:**   I'm sorry you can't say that.

3/15/2021 9:54:33 AM

**TRAVIS:**   Someone who wanted to hurt me.

**Page  11  – Affidavit of Rebecka E. Brown**

3/15/2021 9:54:55 AM

**AW-1:**   You were masturbating to it, and send the that to me

3/15/2021 9:55:03 AM

**AW-1:**   Sent *

3/15/2021 9:55:19 AM

**TRAVIS:**   I did that. Yes. I'm sorry.

24.    An Administrative Subpoena was served on Apple to provide subscriber information for the Apple account associated with TRAVIS's phone number.   A preservation letter was also sent to Apple to preserve the associated account on March 16, 2021.   On April 22, 2021, Apple responded with the following subscriber information and most recent login activity:

> **Name:** Shane Travis
> **Address:** 6104 NE 14th Ave, Portland, OR
> **Phone:** 1-503-756-1451
> **Created On:** Sat, 29 Sep 12 17:45 (PT)
> **eMail (primary):** cryhavocmusic@yahoo.com (verified)
> **eMail:** cryhavocmusic@icloud.com (verified)
> **Game Center Nickname:** switchblader09
>
> **Date/Time:** Thu Mar 18 23:09:24.539 PDT 2021
> **IP Address:** 73.67.140.101
> **Geolocation:** Portland, OR
> **Provider:** Comcast

**Page  12  – Affidavit of Rebecka E. Brown**

25.     An Administrative Subpoena was served on Comcast for subscriber information associated with IP Address: 73.67.140.101, on Thursday, March 18, 2021, at 11:09 P.M.   On May 3, 2021, Comcast responded with the following subscriber information:

> **Subscriber Name:** SHANE TRAVIS
> **Service Address:** 6104 NE 14TH AVE, PORTLAND, OR 972114245
> **Billing Address:** 6104 NE 14TH AVE, PORTLAND, OR 972114245
> **Telephone#:** (503) 756-1451
> **Type of Service:** High Speed Internet Service
> **Account Number:** 8778104030537974
> **Account Status:** Active
> **IP Assignment:** Dynamically Assigned
> **E-mail User Ids:** Puckpunx

26.     On June 11, 2021, a search warrant (case number: 21-MC-686) was signed in the District of Oregon authorizing the search and seizure of electronic data contained within the Apple account, cryhavocmusic@icloud.com, the account used by TRAVIS to send videos depicting CP to AW-1.   Apple responded to the warrant on June 25, 2021, and provided all available files requested in the warrant.   A review of the iCloud account revealed that no images, videos, or messages were saved to the cloud.

27.     An NCIC query conducted on October 6, 2021, for TRAVIS was negative.   A law enforcement database query conducted on October 6, 2021, suggested that TRAVIS still resides at 6104 NE 14th Avenue, Portland, Oregon.   According to Accurint, an adult female (AF-1) possibly resides at the aforementioned address.   An NCIC query conducted on March

**Page  13  – Affidavit of Rebecka E. Brown**

15, 2021, revealed that AF-1 was arrested in May 2019, for Driving Under the Influence of

Alcohol.

### Examination of Data Storage Devices

28.    I know that a forensic image is an exact physical copy of a data storage device.

A forensic image captures all data on the subject media without viewing or changing the data in

any way.   Absent unusual circumstances, it is essential that a forensic image be obtained prior to

conducting any search of data for information subject to seizure pursuant to the warrant.

29.    Since digital data may be vulnerable to inadvertent modification or destruction, a

controlled environment, such as a law enforcement laboratory, is often essential to conducting a

complete and accurate analysis of the digital devices from which the data will be extracted.

Software used in a laboratory setting can often reveal the true nature of data.   Therefore, a

computer forensic reviewer needs a substantial amount of time to extract and sort through data

that is concealed or encrypted to determine whether it is evidence, contraband, or an

instrumentality of a crime.

30.    Analyzing the contents of a computer or other electronic storage device, even

without significant technical difficulties, can be very challenging, and a variety of search and

analytical methods must be used.   For example, searching by keywords, which is a limited

text-based search, often yields thousands of hits, each of which must be reviewed in its context

by the examiner to determine whether the data is within the scope of the warrant.   Merely

finding a relevant hit does not end the review process.   The computer may have stored

information about the data at issue which may not be searchable text, such as: who created it;

when and how it was created, downloaded, or copied; when it was last accessed; when it was last

**Page  14  – Affidavit of Rebecka E. Brown**

modified; when it was last printed; and when it was deleted.   The relevance of this kind of data

is often contextual.   Furthermore, many common email, database, and spreadsheet applications

do not store data as searchable text, thereby necessitating additional search procedures.   To

determine who created, modified, copied, downloaded, transferred, communicated about,

deleted, or printed data requires a search of events that occurred on the computer in the time

periods surrounding activity regarding the relevant data.   Information about which users logged

in, whether users shared passwords, whether a computer was connected to other computers or

networks, and whether the users accessed or used other programs or services in the relevant time

period, can help determine who was sitting at the keyboard.

   31. *Latent Data*:   Searching digital devices can require the use of precise, scientific

procedures designed to maintain the integrity of the evidence and to recover latent data.   The

recovery of such data may require the use of special software and procedures.   Data that

represents electronic files or remnants of such files can be recovered months or even years after

it has been downloaded onto a hard drive, deleted, or viewed via the Internet.   Even when such

files have been deleted, they can be recovered months or years later using readily available

forensic tools.   Normally, when a person deletes a file on a computer, the data contained in the

file does not actually disappear; rather, that data remains on the hard drive until it is overwritten

by new data.   Therefore, deleted files, or remnants of deleted files, may reside in space on the

hard drive or other storage media that is not allocated to an active file.

   32. *Contextual Data*

     a. In some instances, the computer "writes" to storage media without the

specific knowledge or permission of the user.   Generally, data or files that have been received

**Page  15  – Affidavit of Rebecka E. Brown**

via the Internet are automatically downloaded into a temporary Internet directory or cache.    The browser typically maintains a fixed amount of hard drive space devoted to such data or files, and the files are only overwritten as they are replaced with more recently viewed Internet pages. Thus, the ability to retrieve artifacts of electronic activity from a hard drive depends less on when the file was downloaded or viewed than on a particular user's operating system, storage capacity, and computer usage.    Logs of access to websites, file management/transfer programs, firewall permissions, and other data assist the examiner and investigators in creating a "picture" of what the computer was doing and how it was being used during the relevant time in question. Given the interrelationships of the data to various parts of the computer's operation, this information cannot be easily segregated.

    b.  Digital data on the hard drive that is not currently associated with any file may reveal evidence of a file that was once on the hard drive but has since been deleted or edited, or it could reveal a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).    Virtual memory paging systems can leave digital data on the hard drive that show what tasks and processes on the computer were recently used.    Web browsers, email programs, and chat programs store configuration data on the hard drive that can reveal information such as online nicknames and passwords.    Operating systems can record additional data, such as the attachment of peripherals, the attachment of USB flash storage devices, and times the computer was in use.    Computer file systems can record data about the dates files were created and the sequence in which they were created.    This data can be evidence of a crime, indicate the identity of the user of the digital device, or point toward the existence of evidence in other locations.    Such data may also lead to exculpatory evidence.

**Page 16 – Affidavit of Rebecka E. Brown**

c.      Further, evidence of how a digital device has been used, what it has been used for, and who has used it, may be learned from the absence of particular data on a digital device.   Specifically, the lack of computer security software, virus protection, and malicious software, evidence of remote control by another computer system, or other programs or software may assist in identifying the user indirectly and may provide evidence excluding other causes for the presence or absence of the items sought by this application.   Additionally, since computer drives may store artifacts from the installation of software that is no longer active, evidence of the historical presence of the kind of software and data described may have special significance in establishing timelines of usage, confirming the identification of certain users, establishing a point of reference for usage and, in some cases, assisting in the identification of certain users. This data can be evidence of a crime, can indicate the identity of the user of the digital device, or can point toward the existence of evidence in other locations.   Such data may also lead to exculpatory evidence.   Evidence of the absence of particular data on the drive is not generally capable of being segregated from the rest of the data on the drive.

## Electronic Records

33.    This application seeks permission to search for particular items, described in Attachment B, which will likely be found in the Premises and/or on the person of Shane Travis, described in Attachment A, in whatever form those items may be found.   One form in which that evidence will likely be found is as data stored on a computer's hard drive, on other digital storage media, or on other digital devices, including cell phones (hereinafter collectively referred to as "digital devices").   Thus, the warrant applied for would authorize the seizure of electronic

**Page 17 – Affidavit of Rebecka E. Brown**

storage media or the copying of electronically stored information, all under Fed. R. Crim. P. 41(e)(2)(B).

34.     Specifically, this application seeks permission to search for, seize, and examine:

a.     All records, documents, or materials, including correspondence, pertaining to the production, transportation, distribution, receipt, or possession of child pornography, as that term is defined in 18 U.S.C. § 2256;

b.     All originals and copies of visual depictions of minors engaging in sexually explicit conduct as that term is defined in 18 U.S.C. § 2256, including photographs, images, and videos, whether in physical or digital form;

c.     Computers, storage media, or digital devices, including cellular telephones, that were used or are capable of being used to commit the offenses described above, or to create, access, or store contraband or evidence, fruits, or instrumentalities of those offenses;

d.     Evidence of Internet usage for the transportation, distribution, receipt, or possession of child pornography as defined in 18 U.S.C. § 2256, including dates and times of usage; IP addresses; and screennames, user names, and passwords used to access the Internet or any accounts via the Internet;

e.     Communications, including emails, chats, bulletin board posts, and comments relating to the production, transportation, distribution, receipt, or possession of child pornography, to children engaged in sexually explicit conduct, and/or to a sexual interest in children; and

f.     All records, documents, or materials naming or identifying minors visually

**Page  18 – Affidavit of Rebecka E. Brown**

depicted while engaging in sexually explicit conduct, as that term is defined in 18 U.S.C. § 2256.

      g.    "Records," "items," "documents," and "materials" include all of the foregoing items in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

35.    There is probable cause to believe, and I do believe, that the items described in Attachment B will be stored on one or more digital device(s) because, based on the foregoing facts and on my knowledge, training, and experience, I know that:

      a.    Computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a digital device, deleted, or viewed via the Internet.   Electronic files downloaded to a digital device can be stored for years at little or no cost.   Even when files have been deleted, they can be recovered months or years later using forensic tools.   When a person "deletes" a file on a digital device, the data contained in the file does not actually disappear; rather, that data remains on the digital device until it is overwritten by new data.   Therefore, deleted files or remnants of deleted files may reside in free space or slack space – that is, in space on the digital device that is not currently being used by an active file – for long periods of time before they are overwritten.   In addition, a digital device's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

      b.    Wholly apart from user-generated files, digital devices – in particular, internal hard drives – contain electronic evidence of how a digital device has been used,

**Page  19  – Affidavit of Rebecka E. Brown**

what it has been used for, and who has used it.   For example, forensic evidence can take the form of operating system configurations, artifacts from the operating system or application operation, file system data structures, and virtual memory "swap" or paging files.   Digital device users typically do not erase or delete this evidence, because special software is typically required for that task.   However, it is technically possible to delete this information.

      c.     Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

36.    As further described in Attachment B, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant but also forensic electronic evidence that establishes how digital devices were used, the purpose of their use, who used them, and when.   I have probable cause to believe that this forensic electronic evidence will be on any digital device in the Premises or on the person of Shane Travis, described in Attachment A, because, based on my knowledge, training, and experience, I know:

      a.     Data on a digital device can provide evidence of a file that was once on the digital device but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).   Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active.   Web browsers, email programs, and chat programs store configuration information on the digital device that can reveal information such as online nicknames and passwords.   Operating systems can record

**Page  20  – Affidavit of Rebecka E. Brown**

additional information, such as the attachment of peripherals, the attachment of USB

flash storage devices or other external storage media, and the times the digital device was

in use.   Computer file systems can record information about the dates files were created

and the sequence in which they were created.

      b.      Forensic evidence on a digital device can also indicate who has used or

controlled the device.   This "user attribution" evidence is analogous to the search for

"indicia of occupancy" while executing a search warrant at a residence.   For example,

registry information, configuration files, user profiles, email, email address books, "chat,"

instant messaging logs, photographs, the presence or absence of malware, and

correspondence (and the data associated with the foregoing, such as file creation and last-

accessed dates) may be evidence of who used or controlled the digital device at a relevant

time.   Further, forensic evidence on a digital device can show how and when it was

accessed or used.   Such "timeline" information allows the forensic analyst and

investigators to understand the chronological context of access to the digital device, its

use, and events relating to the offense under investigation.   This "timeline" information

may tend to either inculpate or exculpate the user of the digital device.   In addition,

forensic evidence on a digital device may provide relevant insight into the user's state of

mind as it relates to the offense under investigation.   For example, information on a

digital device may indicate the user's motive and intent to commit a crime (e.g., relevant

web searches occurring before a crime indicating a plan to commit the same),

consciousness of guilt (e.g., running a "wiping program" to destroy evidence on the

digital device, or password-protecting or encrypting such evidence in an effort to conceal

**Page  21  – Affidavit of Rebecka E. Brown**

it from law enforcement), or knowledge that certain information is stored on a digital

device (e.g., logs indicating that the incriminating information was accessed with a

particular program).

      c.     A person with appropriate familiarity with how a digital device works can,

after examining this forensic evidence in its proper context, draw conclusions about how

digital devices were used, the purpose of their use, who used them, and when.

      d.     The process of identifying the exact files, blocks, registry entries, logs, or

other forms of forensic evidence on a digital device that are necessary to draw an

accurate conclusion is a dynamic process.   While it is possible to specify in advance the

records to be sought, electronic evidence is not always data that can be merely reviewed

by a review team and passed along to investigators.   Whether data stored on a digital

device is evidence may depend on other information stored on the digital device and the

application of knowledge about how a digital device behaves.   Therefore, contextual

information necessary to understand other evidence also falls within the scope of the

warrant.

      e.     Further, in finding evidence of how a digital device was used, the purpose

of its use, who used it, and when, sometimes it is necessary to establish that a particular

thing is not present on a digital device.   For example, the presence or absence of counter-

forensic programs or anti-virus programs (and associated data) may be relevant to

establishing the user's intent.

      f.     I know that when an individual uses a digital device to commit a crime

such as the child pornography offenses described herein, the individual's digital device

**Page  22  – Affidavit of Rebecka E. Brown**

will generally serve both as an instrumentality for committing the crime and also as a storage medium for evidence of the crime.   The digital device is an instrumentality of the crime because it is used as a means of committing the criminal offense.   The digital device is also likely to be a storage medium for evidence of the crime.   From my training and experience, I believe that a digital device used to commit a crime of this type may contain data that is evidence of how the digital device was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

37.     Specifically, this application seeks permission to search for, seize, and examine, for any computer, storage medium, or digital device whose seizure is otherwise authorized by the warrant and any computer, storage medium, or digital device that contains, is capable of containing, or in which is stored records or information that is otherwise called for by this warrant and Attachment B (hereinafter "Computer"):

     a.      Evidence of who used, owned, or controlled the Computer at the time the things described in this warrant and Attachment B were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

     b.      Evidence of software that would allow others to control the Computer, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

     c.      Evidence of the lack of such malicious software;

**Page  23  – Affidavit of Rebecka E. Brown**

d.      Evidence indicating how and when the Computer was accessed or used to determine the chronological context of computer access, use, and events relating to the crime under investigation and to the Computer user;

e.      Evidence indicating the Computer user's state of mind as it relates to the crime under investigation;

f.      Evidence of the attachment to the Computer of other storage devices or similar containers for electronic evidence;

g.      Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the Computer;

h.      Evidence of the times the Computer was used;

i.      Passwords, encryption keys, and other access devices that may be necessary to access the Computer;

j.      Documentation and manuals that may be necessary to access the Computer or to conduct a forensic examination of the Computer;

k.      Records of or information about IP addresses used by the Computer;

l.      Records of or information about the Computer's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

m.      Contextual information necessary to understand the evidence described in this warrant and Attachment B; and

n.      Routers, modems, and network equipment used to connect computers to

**Page  24  – Affidavit of Rebecka E. Brown**

the Internet.

38.    In most cases, a thorough search of premises and person for information that might be stored on a digital device often requires the seizure of the device and a later, off-site review consistent with the warrant.   In lieu of removing a digital device from the premises, it is sometimes possible to image or copy it.   Generally speaking, imaging is the taking of a complete electronic picture of the digital device's data, including all hidden sectors and deleted files.   Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the digital device and to prevent the loss of the data either from accidental or intentional destruction.   This is true because:

a.    Not all evidence takes the form of documents and files that can be easily viewed on site.   Analyzing evidence of how a digital device has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable.   As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine digital devices to obtain evidence.   Digital devices can store a large volume of information.   Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

b.    Records sought under this warrant could be stored in a variety of formats that may require off-site reviewing with specialized forensic tools.   Similarly, digital devices can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations.   Therefore, searching them

**Page  25  – Affidavit of Rebecka E. Brown**

sometimes requires tools or knowledge that might not be present on the search site.   The

vast array of hardware and software available makes it difficult to know before a search

what tools or knowledge will be required to analyze the system and its data on the

premises.   However, taking the digital device off-site and reviewing it in a controlled

environment will allow its examination with the proper tools and knowledge.

39.    Because several people may share the Premises as a residence, it is possible that

the Premises will contain digital devices that are predominantly used, and perhaps owned, by

persons who are not suspect of a crime.   If it is nonetheless determined that it is possible that the

things described in this warrant could be found on any of those digital devices, the warrant

applied for would permit the seizure and review of those items as well.

### Nature of Examination

40.    Based on the foregoing, and consistent with Fed. R. Crim. P. 41(e)(2)(B), the

warrant for which I am applying would permit seizing, imaging, or otherwise copying digital

devices that reasonably appear to contain some or all of the evidence described in the warrant

and Attachment B, and would authorize a later review of the device or information consistent

with the warrant.   The later review may require techniques, including computer-assisted scans of

the entire device that might expose many parts of a hard drive to human inspection in order to

determine whether it contains material subject to seizure and search under the warrant.

41.    Law enforcement personnel will use procedures designed to identify items to be

seized under the warrant.   These procedures may include the use of a "hash value" library to

exclude normal operating system files that do not need to be searched.   In addition, law

enforcement personnel may search for and attempt to recover deleted, hidden, or encrypted data

to determine whether the data falls within the list of items to be seized under the warrant.

42.      Law enforcement personnel will perform an initial search of the digital devices within a reasonable amount of time not to exceed 120 days from the date of the execution of the warrant.   If, after the initial search, law enforcement personnel determine that an original device contains any data falling within the list of items to be seized pursuant to this warrant, the government will retain the original digital device to, among other things, litigate the admissibility/authenticity of the seized items at trial, ensure the integrity of the copies, ensure the adequacy of the chain of custody, and resolve any issues regarding contamination of the evidence.   If the government needs additional time to determine whether a digital device contains any data falling within the list of items to be seized pursuant to this warrant, it may seek an extension of the time period from the Court within the original 120-day period from the date of the execution of the warrant.   The government shall complete the search of the digital devices within 180 days of the date of execution of the warrant.   If the government needs additional time to complete the search, it may seek an extension of the time period from the Court.

43.      If, at the conclusion of the search, law enforcement personnel determine that particular files or file folders on a digital device do not contain any data falling within the list of items to be seized pursuant to the warrant, they will not search or examine those files or folders further without authorization from the Court.   Law enforcement personnel may continue to examine files or data falling within the list of items to be seized pursuant to the warrant, as well as data within the operating system, file system, or software application relating or pertaining to files or data falling within the list of items to be seized pursuant to the warrant (such as log files, registry data, and the like), through the conclusion of the case.

**Page  27  – Affidavit of Rebecka E. Brown**

44.    If a digital device does not contain any data falling within the list of items to be seized pursuant to this warrant, the government will return that original digital device to its owner within a reasonable period of time following the search of that device, and will seal any image of the device, absent further authorization from the Court.

45.    The government may retain any digital device containing contraband or evidence, fruits of the offenses described herein, or used as an instrumentality of the offenses described herein, or to commence forfeiture proceedings against the computer and storage media and/or the data contained therein.

46.    The government has made no prior efforts in other judicial fora to obtain the evidence sought in this warrant.

### Retention of Image

47.    The government will retain a forensic image of the electronic storage device subjected to analysis for a number of reasons, including proving the authenticity of evidence to be used at trial; responding to questions regarding the corruption of data; establishing the chain of custody of data; refuting claims of fabricating, tampering with, or destroying data; and addressing potential exculpatory evidence claims where, for example, a defendant claims that the government avoided its obligations by destroying data or returning it to a third party.

### Inventory and Return

48.    With respect to the seizure of electronic storage media or the seizure or imaging of electronically stored information, the search warrant return to the Court will describe the physical storage media that were seized or imaged.

**Page  28  – Affidavit of Rebecka E. Brown**

**<u>Conclusion</u>**

49.     Based on the foregoing information, I have probable cause to believe, and I do believe, that contraband and evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Sections 2252A(a)(1), (a)(2), and (a)(5)(B), as set forth herein and in Attachment B, are currently at the Premises located at 6104 NE 14th Avenue, Portland, Oregon, or on the person of Shane Travis, more fully described in Attachment A.   I therefore request that the Court issue a warrant authorizing a search of the Premises and person described in Attachment A for the items described above and in Attachment B, and the seizure and examination of any such items found.

///

///

///

///

///

///

///

///

///

///

///

///

///

**Page  29  – Affidavit of Rebecka E. Brown**

50.     This affidavit, the accompanying application, and the requested search warrant were all reviewed by Assistant United States Attorney (AUSA) Andrew Ho prior to being submitted to the Court.   AUSA Ho advised me that, in his opinion, the affidavit and application are legally and factually sufficient to establish probable cause to support the issuance of the requested warrant.

_By telephone_____
REBECKA E. BROWN
Special Agent
Federal Bureau of Investigation


Subscribed to by telephone or other reliable means in accordance with Fed. R. Crim. P. 4.1(b) at _____2:48 PM_____ [~~A.M./~~P.M.] this ___13th___ day of October, 2021.


_____
HONORABLE YOULEE YIM YOU
United States Magistrate Judge

**Page  30  – Affidavit of Rebecka E. Brown**

<u>**ATTACHMENT A**</u>

<u>**Description of Location to Be Searched**</u>

**The Premises Located at 6104 NE 14th Avenue, Portland, Oregon, specifically common areas of the residence, any room rented, controlled, or used by Travis Shane, and any area in which his belongings are stored.**

The premises located at 6104 NE 14th Avenue, Portland, Oregon, is a single-story structure with yellow-colored siding and a brown composite room.  The front door is west facing and is white.  A small section of roof connects the main house to a single-car garage to the south.  The numbers, "6104" are affixed to side of the house on the north side of the door.







Page 1 – Attachment A

## ATTACHMENT A

### Description of Person to Be Searched

The person of Shane Travis, born XX/XX/1978, and any electronic devices on his person. Mr. Travis is approximately 6'2" in height and weighs approximately 260 pounds. He is a Caucasian male with brown eyes. The below photograph depicts Mr. Travis as he appeared when photographed for his Oregon Identification Card in January 2021.



**Page 2 – Attachment A**

**ATTACHMENT B**

**Items to Be Seized**

The following records, documents, and items that constitute contraband and evidence, fruits, and/or instrumentalities of violations of Title 18, United States Code, Section 2252A, involving the transportation, distribution, receipt, and possession of child pornography.

1.      Items to be searched for, seized, and examined:

a.      All records, documents, or materials, including correspondence, pertaining to the production, transportation, distribution, receipt, possession of, or accessing with intent to view child pornography, as that term is defined in 18 U.S.C. § 2256;

b.      All originals and copies of visual depictions of minors engaging in sexually explicit conduct as that term is defined in 18 U.S.C. § 2256, including photographs, images, and videos, whether in physical or digital form;

c.      Computers, storage media, or digital devices, including cellular telephones, that were used or are capable of being used to commit the offenses described above, or to create, access, or store contraband or evidence, fruits, or instrumentalities of those offenses;

d.      Evidence of internet usage for the transportation, distribution, receipt, possession of, or accessing with intent to view child pornography as defined in 18 U.S.C. § 2256, including dates and times of usage; IP addresses; and screennames, user names, and passwords used to access the internet or any accounts via the internet;

e.      Communications, including emails, chats, bulletin board posts, and comments relating to the production, transportation, distribution, receipt, possession of,

**Page 1 – Attachment B**

or accessing with the intent to view child pornography, to children engaged in sexually explicit conduct, and/or to a sexual interest in children; and

       f.     All records, documents, or materials naming or identifying minors visually depicted while engaging in sexually explicit conduct, as that term is defined in 18 U.S.C. § 2256.

2.     As used in this attachment, the terms "records," "items," "documents," and "materials" include all of the foregoing items in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

3.     For any computer, storage medium, or digital device whose seizure is otherwise authorized by this warrant and any computer, storage medium, or digital device that contains, is capable of containing, or in which is stored records or information that is otherwise called for by this warrant (hereinafter "Computer"):

       a.     Evidence of who used, owned, or controlled the Computer at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence.

       b.     Evidence of software that would allow others to control the Computer, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software.

       c.     Evidence of the lack of such malicious software.

**Page 2 – Attachment B**

      d.     Evidence indicating how and when the Computer was accessed or used to determine the chronological context of computer access, use, and events relating to the crime under investigation and to the Computer user.

      e.     Evidence indicating the Computer user's state of mind as it relates to the crime under investigation.

      f.     Evidence of the attachment to the Computer of other storage devices or similar containers for electronic evidence.

      g.     Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the Computer.

      h.     Evidence of the times the Computer was used.

      i.     Passwords, encryption keys, and other access devices that may be necessary to access the Computer.

      j.     Documentation and manuals that may be necessary to access the Computer or to conduct a forensic examination of the Computer.

      k.     Records of or information about Internet Protocol addresses used by the Computer.

      l.     Records of or information about the Computer's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

      m.     Contextual information necessary to understand the evidence described in this attachment.

**Page 3 – Attachment B**

n.      Routers, modems, and network equipment used to connect computers to the Internet.

**Search Procedure**

4.      The search for data capable of being read, stored, or interpreted by a computer or storage device may require authorities to employ techniques, including imaging any computer or storage media and computer-assisted scans and searches of the computers and storage media, that might expose many parts of the computer to human inspection in order to determine whether it constitutes evidence as described by the warrant.

5.      The initial examination of the computer and storage media will be performed within a reasonable amount of time not to exceed 120 days from the date the warrant is executed. If the government needs additional time to conduct this review, it may seek an extension of the time period from the Court within the original 120-day period from the date the warrant is executed. The government shall complete this review within 180 days of the date the warrant is executed. If the government needs additional time to complete this review, it may seek an extension of the time period from the Court.

6.      If, at the conclusion of the examination, law enforcement personnel determine that particular files or file folders on the computer and storage media do not contain any data falling within the scope of the warrant, they will not search or examine those files or folders further without authorization from the Court. Law enforcement personnel may continue to examine files or data falling within the purview of the warrant, as well as data within the operating system, file system, software application, etc., relating to files or data that fall within the scope of the warrant, through the conclusion of the case.

**Page 4 – Attachment B**

7.      If an examination is conducted and the computer and storage media do not contain any data falling within the ambit of the warrant, the government will return the computer and storage media to its owner within a reasonable period of time following the search and will seal any image of the computer and storage media, absent further authorization from the Court.

8.      The government may retain any digital device containing contraband or evidence, fruits, or instrumentalities of the offenses described herein, or to commence forfeiture proceedings against the computer and storage media and/or the data contained therein.

9.      The government will retain a forensic image of the computer and storage media for a number of reasons, including proving the authenticity of evidence to be used at trial, responding to questions regarding the corruption of data, establishing the chain of custody of data, refuting claims of fabricating, tampering with, or destroying data, and addressing potential exculpatory evidence claims where, for example, a defendant claims that the government avoided its obligations by destroying data or returning it to a third party.

**Page 5 – Attachment B**